IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE PETITIONERS ALLIANCE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CASE NO.: CV-01-B-0497-S |
| | ) |
| THE CITY COUNCIL OF THE CITY | ) |
| OF BIRMINGHAM, et al., | ) |
| | ) |
| Defendants. | ) |

**ENTERED**

MAR 1 5 2002

## MEMORANDUM OPINION

Currently before the court are motions to dismiss filed by Defendant The Water Works and Sewer Board of the City of Birmingham ("Water Board") and Defendant The City Council of the City of Birmingham ("City Council"). Each contends that the court should dismiss the action filed by Plaintiffs The Petitioners Alliance and its members ("Petitioners Alliance")[1] for lack of subject matter jurisdiction or in the alternative for failure to state a claim upon which relief may be granted. (Water Bd. Mot.; City Council Mot.)[2] *See* FED. R. CIV. P. 12(b)(1), (6). Upon consideration of the record, the submissions of parties, the argument of counsel, and the relevant law, the court is of the opinion that plaintiff's action is due to be dismissed for failure to state a claim upon which relief may be granted.

---

[1] The Petitioners Alliance is a committee established pursuant to Section 3.15(b) of the Mayor-Council Act of 1955. (Compl. ¶ 1.) It is composed of Bob Friedman, Charlie Pierce, Loretta Y. Knight, Alison M. Glascock, William Horn, and John C. Harris, all of whom are adult residents and voters of the City of Birmingham. (Compl. ¶¶ 1-7.)

[2] Because the City Council's motion expressly adopts and incorporates the grounds stated in the Water Works Board's motion, future references will be made solely to the Water Works Board's motion which shall be designated as "Mot."

## I. SUMMARY OF FACTS[3]

In September 1998, the Water Board transferred all of its assets to the City of Birmingham. (Compl. ¶ 13.) Those assets consisted of the water system, consisting of certain water reservoirs and filtration plants, water transmission and distribution systems, and various related properties; and the sewer system, consisting of sewage treatment plants, wastewater collection systems and various related projects. (*Id.*)

On July 10, 2000, the Water Board adopted a resolution authorizing its Chairman and General Manager to offer to re-acquire the assets that it transferred to the City in 1998. (Compl. ¶ 14.) On July 18, 2000, the City Council passed Ordinance No. 00-123 expressing its intent to enter into agreements with the Water Board to transfer the assets back to the Water Board. (*Id.*) Although Mayor Kincaid vetoed the Ordinance on August 3, 2000, the City Council overrode the veto, and on August 11, 2000, the Ordinance became effective. (*Id.*)

In late August 2000, Mayor Kincaid brought suit in Jefferson County Circuit Court seeking to enjoin the City Council's transfer of assets to the Board under the Ordinance, claiming that the proposed transfer was improper because the Board ceased to be a legal entity after it transferred the assets to the City in 1998. (Compl. ¶ 15.) The court ordered that the parties maintain the status quo as it existed when the Mayor filed the lawsuit, thereby temporarily prohibiting the proposed transfer. (Mot. ¶ 6.)

---

[3] Well pleaded allegations are taken as true when deciding the issue of federal jurisdiction. *Gibson v. Firestone*, 741 F.2d 1268, 1270-71 (11th Cir. 1984). In deciding whether plaintiff states a cause of action upon which relief may be granted, the court assumes the truth of the material facts alleged in the complaint. *U.S. v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999). Therefore, a trial or other proceedings might show the actual facts to be different from the allegations set out here as "facts."

On September 15, 2000, the Petitioners Alliance filed a petition in the Probate Court of Jefferson County, Alabama, pursuant to Section 3.15(b) of the Mayor-Council Act of 1955, as amended, requesting the adoption of an ordinance proposed by initiative. (Compl. ¶¶ 16, 17.) If approved, the proposed ordinance would repeal Ordinance No. 00-123 and would require a city-wide vote to approve the transfer of assets from the City to the Water Board. (*Id.*) On October 9, 2000, the Probate Judge certified by letter to the City Council that over ten percent of qualified voters had signed the petition.[4] (Compl. ¶ 18; Mot. ¶ 8.) On October 17, 2000, the City Council voted to take no action on the petition, which was then sent to the Election Commission. (Compl. ¶ 19.) On November 13, 2000, the Election Commission decided to hold a special election on the proposed ordinance on February 6, 2001, which was later postponed until February 27, 2001. (*Id.*)

In December 2000, the Water Board sued the Petitioners Alliance in Jefferson County Circuit Court seeking to enjoin the special election. (Compl. ¶¶ 20-21.) The state court denied the injunction and dismissed the Board's complaint. (Compl. ¶ 21.)

On February 23, 2001, the Circuit Court dismissed the Mayor's lawsuit, lifted the status quo order, and denied the Mayor's request for an injunction pending appeal. (Mot. ¶ 10.) The Alabama Supreme Court denied the Mayor's request that it enjoin the proposed transfer. (*Id.*)

---

[4] Section 3.15(b) "allows voters in cities whose population is 300,000 or more according to the most recent federal census to submit a petition to the Council for adopting ordinances by initiative votes. Such petitions must be signed by 10% or more of the qualified electors of the City. The petitions must initially be submitted to the Probate Judge for verification. If the Probate Judge determines that the petition contains the names of at least 10% of registered voters within the City, he must certify it and submit the proposed ordinance to the Council. The Council may, within 20 days of the Probate Judge's certification, either pass and adopt the proposed ordinance, without alterations, or transmit it to the Election Commission." (Mot. ¶ 7 n.1.)

Once the status quo order was lifted on February 23, 2001, the City transferred the water and sewer system assets back to the Water Board in accordance with Ordinance No. 00-123. (*Id.*) On February 26, 2001, plaintiffs filed the present action seeking to enjoin the transfer or alternatively to rescind any such transfer that took place before February 27, 2001. (Mot. ¶ 11.) On February 27, 2001, the citizens of the City of Birmingham voted to overturn Ordinance No. 00-123 and to require a city-wide vote to approve the transfer of assets to the Water Board. (Mot. ¶ 12; Pl.'s Resp. at 1-2.)

Plaintiffs' complaint alleges three causes of action. First, plaintiffs claim that the City Council's attempt "to strip [the special] election of any meaning . . . by transferring or attempting to transfer the assets on the eve of the special election . . . constitutes a fundamental abridgement of the right to vote of the citizens of Birmingham as guaranteed by the Fourteenth Amendment of the United States Constitution." (Compl. ¶¶ 30, 31.) Second, plaintiffs claim that the Mayor-Council Act vests the voters of Birmingham with the statutory right to challenge the City Council's ordinances, and that the City Council violated the voters' vested right to challenge Ordinance No. 00-123 by transferring or attempting to transfer the assets to the Board on the eve of the special election. (Compl. ¶ 33.) Plaintiff contends that the City Council's action constitutes a violation of "the substantive due process rights of voters of the City as protected by the Fourteenth Amendment." (Compl. ¶ 34.) Third, plaintiff's contend that the City Council "has violated the letter and spirit of the [Mayor-Council] Act" by transferring or attempting to transfer the assets to the Board on the eve of the special election. (Compl. ¶ 37.)

## II. SUBJECT MATTER JURISDICTION

Defendants contend that the court lacks subject matter jurisdiction over this action. (*See* Mot. ¶¶ 13-21.) "Federal courts are courts of limited jurisdiction," possessing only as much adjudicative power as is authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a cause of action lies outside this limited jurisdiction, and the burden of establishing the court's subject matter jurisdiction rests with the party asserting jurisdiction. *Id.* The court's subject-matter jurisdiction, the statutory and constitutional basis of its power to adjudicate a case, is not defeated by the absence of a valid cause of action. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). Subject matter jurisdiction may exist even if plaintiff has failed to state a cause of action upon which relief may be granted. *Id.* (citation omitted). The court has jurisdiction if plaintiff's right to relief under the complaint will be sustained under one construction of the Constitution and laws of the United States but defeated under another construction, unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (citation omitted). Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to invoke a federal controversy." *Id.*

Subject matter jurisdiction is determined by the face of the well-pleaded complaint, the allegations of which are taken as true for deciding the issue of jurisdiction. *Gibson*, 741 F.2d at 1270. Plaintiffs have alleged deprivation of their right to vote under the Fourteenth Amendment. (Compl. ¶¶ 28-34.) Defendants argue that the right to vote in state elections is a right or

privilege of state citizenship, rather than national citizenship. *See Snowden v. Hughes*, 321 U.S. 1, 7 (1944). The right to vote in state elections is not protected by the Fourteenth Amendment. *Id.* "There is no federally protected constitutional right to petition for, have access to the ballot, and vote in a municipal initiative election." *Lee v. Comm'rs' Court of Jefferson County, Texas*, 916 F. Supp. 2d 712, 715 (E.D. Tex. 2000) (citing *Citizens' Right to Vote v. Morgan*, 916 F. Supp. 601, 608 (S.D. Miss. 1996)). Plaintiffs contend that the right to vote in state elections is protected by the Fourteenth Amendment. "[T]he right to vote in State as well as federal elections, and the protection afforded that right by the federal Constitution, are unquestioned." *Wright v. Mahan*, 478 F. Supp. 468, 472 (E.D. Va. 1979) (citing *Harper v. Virginia State Bd. of Electors*, 383 U.S. 663, 666 (1966) (concluding that the Equal Protection Clause of the Fourteenth Amendment limits a State's ability to condition the exercise of the right to vote on the payment of a fee)). Plaintiffs' claims are adequate to invoke federal subject matter jurisdiction. *See Gibson*, 741 F.2d at 1271 (holding that federal subject matter jurisdiction exists over allegations of a deprivation of First Amendment right to vote and Fourteenth Amendment right to due process and equal protection in the context of a state election, whether or not sufficient to state a claim for relief).

### III. RULE 12(b)(6) MOTION TO DISMISS

A defendant may move to dismiss a complaint that fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). Because a motion to dismiss attacks the legal sufficiency of plaintiff's cause of action, the court assumes the truth of the factual allegations in the complaint, *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999) (citation omitted); *U.S. v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir.

1999), and construes factual allegations in the light most favorable to the plaintiff, *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). Dismissal is appropriate only if the movant demonstrates that plaintiff has not alleged a set of facts that would, if established at trial, entitle it to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

In *Snowden v. Hughes*, the plaintiff brought suit against members of the state canvassing committee who, in violation of state law, refused to nominate plaintiff for office even though he had received the requisite number of votes. *See* 321 U.S. at 2-6. Plaintiff claimed that defendants' violation of his state law right to become a candidate for and be elected to state office upon receipt of the requisite number of votes also infringed his rights under the Fourteenth Amendment. *See id.* at 6. The Supreme Court reasoned that plaintiff's claim was without merit, because none of the Fourteenth Amendments provisions guaranteeing rights of persons and property, the Due Process Clause, the Equal Protection Clause, and the Privileges and Immunities Clause, protected one's state law rights to vote in state elections or to become a candidate for state office. *See id.* at 7-13.

However, since *Snowden*, the Supreme Court has determined that the Fourteenth Amendment provides some protection against the deprivation of an individual's state-created right to vote. "Undeniably the Constitution of the United States protects the rights of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (concluding that a state geographical apportionment scheme that assigned different weights to votes on the basis of the voter's place of residence violated the Fourteenth Amendment's Equal Protection Clause). "[A] State violates the Equal Protection Clause of the

7

Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard." *Harper*, 383 U.S. at 666 (holding that a state cannot make the payment of a poll tax a precondition for voting in state elections). A State's restriction of the right to vote in elections to approve the issuance of general obligation bonds to property owners violates the Fourteenth Amendment's Equal Protection Clause. *See City of Phoenix, Ariz., v. Kolodziejski*, 399 U.S. 204, 215 (1970).

In the instant case, plaintiffs allege that the City Council's transfer of the assets under a valid ordinance on the eve of the special election in which the voters of Birmingham were to decide whether such a transfer must first be approved by a city-wide vote violates the voters' Fourteenth Amendment rights to vote and substantive due process rights. (Compl. ¶¶ 28-34.) Plaintiffs allegations in counts one and two are insufficient to state a claim upon which relief may be granted, because (1) there is no federally-protected right to vote in a municipal initiative election, and (2) there were no preconditions placed on the right to vote in the special election that could threaten the voters' rights under the Equal Protection Clause.

First, "[t]here is no federally protected constitutional right to petition for, have access to the ballot, and vote in a municipal initiative election." *Lee*, 916 F. Supp. 2d at 715 (citing *Citizens' Right to Vote*, 916 F. Supp. at 608). In *Biddulph v. Mortham*, an Eleventh Circuit panel noted plaintiff's acknowledgment that the "right to propose legislation by citizen initiative is not guaranteed by the United States Constitution but is a state-created right" and labeled as dicta a prior panel's suggestion that such a right had a federal basis. 89 F.3d 1491, 1497 n.5 (11th Cir. 1996). "[T]he initiative process exists by virtue of State law; it is a right created by the State, and a right that the State properly may modify or withdraw." *Wright*, 478 F. Supp. at 474. In

8

*Gibson*, an Eleventh Circuit panel reasoned that the right to vote on a proposed amendment to a State constitution "derive[s] from wholly-state created procedures by which issues that might otherwise be considered by elected representatives may be put to the voting populace. The state, having created such a procedure, retains the authority to interpret it scope and availability." 741 F.2d at 1273.

Second, there is no allegation that anyone's right to vote on the initiative at issue has been infringed. (*See* Compl.) The election on the proposed ordinance took place as planned and there are no allegations that any citizen was prevented from voting. Plaintiffs contend that because the City Council transferred an asset prior to the election in which the voters decided that such an asset could not be transferred without a city-wide vote approval that the City Council violated each voter's right that his "vote will count," thereby "stripping the right to vote of any meaning on election day." (*See* Pl.'s Opp. at 13, 15.) This argument does not save plaintiffs' claim. Because no one has been denied the right to vote or access to the ballot, there is no Fourteenth Amendment violation. *See Georgia State Conference of NAACP Branches v. Cox*, 183 F.3d 1259, 1264 (11th Cir. 1999) (holding that in right to vote cases, there is no legally cognizable injury in fact without the denial of the right to vote or access to the ballot). Also, plaintiffs' allegations fail to implicate the one concern that has motivated federal courts to interfere with state elections: unequal treatment. *See, e.g., Kolodziejski*, 399 U.S. 204 (holding that the Equal Protection Clause prohibits a state from excluding non-property owners from the polls); *Harper*, 383 U.S. at 670 (holding that the Equal Protection Clause prohibits a state from making the payment of a poll tax a precondition for voting in state elections); *Reynolds*, 377 U.S. at 563 (holding that a state's assignment of different weights to votes on the basis of the voter's

place of residence violates the Equal Protection Clause). Therefore, counts one and two of the complaint, which allege violations of the Fourteenth Amendment, fail to state claims upon which relief may be granted and are due to be dismissed.

### IV. THE REMAINING STATE LAW CLAIM

Because plaintiff's federal claims have been dismissed, the only claim remaining is a state law claim. Because the parties are not diverse, the court has no original jurisdiction over these claims under 28 U.S.C. § 1332. Under 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over this state law claim. Consequently, plaintiffs' state law claim is due to be dismissed without prejudice.

### CONCLUSION

For the reasons stated herein, the court concludes that defendants' motions to dismiss are due to be granted. Plaintiffs' claims under the Fourteenth Amendment are due to be dismissed for failure to state a claim upon which relief may be granted. Plaintiffs' remaining state law claim is due to be dismissed without prejudice. An order granting defendants' motions and dismissing this case will be entered contemporaneously herewith.

DONE this 15th day of March, 2002.

SHARON LOVELACE BLACKBURN  
United States District Judge